By the Court.—Sedgwick, J.
The check in contest here was written Tby Bullwinkle, and by him handed to Merrill. It was payable to the defendant, Whitefield. When Bullwinkle did this, he knew, or was bound to, as one of the payees of the note, that, as between Whitefield and Merrill, at least Merrill was bound to indemnify Whitefield against the payment of the note (Morton v. Rogers, 12 Wend. p. 484 ; S. C., 14 Id. p. 576 ; Nelson v. Cowing, 3 Hill, p. 336).
Under Geery v. Cockroft, in this court (33 Supr. Gt. R., 146), Dob v. Halstead (16 J. R. p. 34), and Rogers v. Batchelor (11 Peters, p. 230), there is no doubt that, if Bullwinkle had assented to the check being *52 paid in satisfaction of Merrill’s obligation, that Whitefield conld receive it for" that purpose.' blow, Bullwinkle’ s assent is not only such as he himself gave, but: such as he authorized Merrill to give. This is a stronger case than if the check had been drawn to bearer. It being drawn by Bullwinkle to Whitefield shows that he expected it would go into his hands. Having entrusted Merrill with such a check (Story’s Ag. note to § 34), he held the latter out as having an unlimited power to dispose and use such instrument as he might please (Story's Ag. p. 228 ; Coddington v. Bay, 20 Johns, p. 637; Hatfield v. Beynold, 34 Barb. p. 613). Bullwinkle having made Merrill his agent, and having, under the circumstances above considered, sent him to Whitefield, is bound by Merrill’s exercise of such power, as he had apparently given to him, irrespective of any special instructions. If, in this manner, Merrill could bind Bullwinkle, there is no doubt that, as a matter of fact, he gave to Whitefield Bullwinkle’s unconditional assent to the check being used in favor of Merrill’s obligation to Whitefield.
A check is not looked upon in such circumstances as ordinary commercial paper, but as an' equivalent of money. It may be doubted that this case should be looked upon otherwise than if Merrill had drawn money upon the firm’s check and paid it to Whitefield (Sterling n. Jaudon, 48 Barb. p. 459 ; Reynolds v. Kenyon, 43 Barb. p. 599). Whitefield having done that with the check which Bullwinkle authorized him to, cannot be liable to Bullwinkle for so doing; still less would he be liable to the plaintiff, as assignee of the firm.
When the case was here before, the chief justice demonstrated that, in an action by the firm on the note against Whitefield as maker, there could not have been a recovery before the adoption of our present" system. Chitty on Bills, p. 71, says that “where an action is brought by several plaintiffs, whether or not general *53 ■partners or indorsees, against an acceptor, it is a good defence to show that the acceptance was given to accommodate one of them, or on his promise to provide for the bill and the innocent co-plaintiffs, however defrauded by their partners, cannot recover at law or in equity.”
In Sparrow v. Clusmein (9 B. & C. 246), cited by the learned chief justice, the court said: “A party to whom an acceptance is given upon a condition that he will provide for it when due, and who does not perform that condition, cannot sue the acceptor, and if he therefore could not have sued alone, how can he sue jointly with others? His partners, being bound by his act, cannot recover through him.”
This has a close application here. Merrill, for several motes, had, for his own accommodation, procured Whitefield to become maker. For some reason this ended. Merrill then presented a note drawn to the order of Bull winkle & Merrill, and requested Whitefield to become an accommodation maker to it. It is very clear that the circumstances implied, not that Merrill should be the indemnity of the defendant, as in former cases, but that the firm should be his security ; and that the mote in question, which was the successor of the first mote, was given upon Merrill’s promise (implied) that the firm would protect Whitefield. Of all this the firm, being the payees, had constructive, if not actual, notice, .and when Bullwinkle endorsed the name of the firm •upon the note and procured it to be discounted, he ratified, if he were not originally bound by Merrill’s promise, that the firm would take care of the note. If we could conceive that the firm paid Merrill personally such a new consideration for the note as would make it, under ordinary circumstances, a bona-fide holder, that fact would not alter the situation. They did not buy accommodation paper, given for the purpose of benefiting Merrill in any way that it could be used; but they *54 Bought it with knowledge of the condition affixed when it was given to Merrill, viz., that the firm would provide for its payment.
But there could he no such new consideration given hy the firm to Merrill. If they advanced anything on it to Merrill, whose money did they advance? It was Merrill’s money as much as it was Bullwinkle’s, and an advance under such circumstance would give (if it is-possible to state that it gave any right of action) only that right of action agaipst Whitefield which the firm would have had, or Bullwinkle would have had, against Merrill on the advance. It is very clear that that would not have been an action on the advance at all. Of itself, it would not have given any right to an accounting; but an accounting being had for other reasons, that Avould be an item.
The chief justice, when reversing the former judgment, surmised that possibly, under our present system, Bullwinkle might have been entitled in an action brought by ‘1 himself and Merrill against their defendant to recover judgment for the amount of his interest in the $500.” But that in order to do this, it would be necessary for him to prove at least the extent of the interest of Bullwinkle in the $500 received by the defendant, and that it was unnecessary to speculate on possible rights which might not thereafter appear in the action.
The plaintiff has not at all shown what was demanded by the chief justice. They,, to be sure, gave evidence of a very vague kind, that if the partnership affairs had been wound up at the time the check was given, May 7,1862, Merrill would have been entitled to nothing. But they also proved that the partnership did not cease until January 1, 1863. Therefore, they proved that on May 7,1873, Merrill’s interest in the firm depended upon the possibility of the future existence of the firm for the rest of the year. For instance, in a, month’s time the business of the firm might have been *55 profitable, and in such case it would appear that on an accounting, Merrill did have an interest in the firm assets, including that $500 if it had not been paid out. I do not think that the plaintiff could have shown what was asked without proving that at the time of the giving of the check, there-had been a dissolution and an accounting, which resulted in Bullwinkle’s becoming sole owner of the assets formerly belonging to the firm.
I havp come to the conclusion that,—1. Whitefield appropriated the firm check to discharge Merrill’s obligation with the assent of Bullwinkle. 2. If this is not so, that the firm of Bullwinkle'& Merrill was bound to provide for the payment of the note, inasmuch as Whitefield was not liable upon it to the firm, and that the check was in effect used to pay the debt of the firm on the note to the holder who discounted it. The judgment should be affirmed, with costs.
Feeedman, J., concurred.